STATE OF CONNECTICUT *v.* RONALD JOHNSON ET AL.

ALCORN, C. J., HOUSE, COTTER, SHAPIRO and BARBER, Js.

Argued June 4—decided July 28, 1970

*Anthony V. DeMayo,* and, of the New York bar, *Kristin B. Glen,* for the appellants (defendants).

*David B. Salzman,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

House, J.  The defendants, Ronald Johnson and Buddy Bonner, were found guilty by a jury of conspiracy to cause injury to persons and property in New Haven by means of explosive materials and compounds, in violation of § 54-197 of the General Statutes.   It is unnecessary to relate in detail the circumstances of the offense of which they were convicted.  It suffices to note that the state produced evidence to prove and claimed to have proved that the defendants, with others, conspired to obtain guns, dynamite and other explosive compounds with the intention and purpose of killing certain New Haven police officers and blowing up the New Haven police station and several banks in that city.

The defendants filed a joint brief in this appeal in support of numerous assignments of error, some of which are not applicable to both defendants and many of which we find it unnecessary to discuss. Upon a review of the entire case as presented to us, we find that a decision upon one assignment of error applicable to both defendants is dispositive of the appeal. This claim is that the court was in error in denying the motion of the defendants to strike the testimony of three employees of C. W. Blakeslee Company regarding the theft of dynamite from a construction site.

A significant element of the state's case was evidence that the defendants and others by prearrangement met with undercover government agents to whom they disclosed plans to kill certain New Haven police officers and blow up the New Haven police station and several banks and their desire to trade sticks of dynamite for machine guns and plastic explosives. Subsequently, on December 23, 1967, at the time and place arranged for the exchange, the police seized from a truck parked by an alleged coconspirator in front of the assigned meeting place two cardboard boxes containing a total of forty-three sticks of dynamite.

During the trial, three employees of C. W. Blakeslee Company were called as witnesses. Upon the representation of the then state's attorney that the dynamite as to which they testified would be "tied up" to this particular case, the witnesses were permitted to testify that during the night of October 31, 1967, someone had ripped a lock off a toolbox at a construction site in Woodbridge and had taken about fifty sticks of dynamite and that the dynamite stolen was the same kind of dynamite as that subsequently seized at the rendezvous with the under-

cover agents in this case. At a later point in the trial the defendants, referring to the representation by the state that it would "connect up the missing dynamite with these particular defendants," moved that the testimony of the Blakeslee employees be stricken because it had not been so connected, was neither material nor relevant, and tended to show the commission of a crime with which the defendants were not charged. The motion was denied, proper exception taken, and the ruling assigned as error on this appeal.

The court gave no reason for its denial of the motion, and the only basis suggested by the record is the finding of the court, in connection with this aspect of the appeal, that when a codefendant, Curtis Belton, was arrested he told the arresting officers that on Halloween night, 1967, "Johnson and some guys stole some dynamite from a construction site in Woodbridge, Conn." It also appears that after Belton was taken to the police station he gave a statement to the police which contained the information that "somebody" said that Johnson had a case of dynamite which he had obtained from a construction site in Woodbridge. There is nothing in the record nor in the evidence contained in the appendices to the briefs to suggest that, aside from being the same kind of dynamite (a kind in common and general use in the area), the dynamite sticks seized in the truck by the police were the same as those which had been stolen from the Blakeslee construction site. The only evidence in the case connecting the two lots of dynamite and making the theft from the Blakeslee Company relevant to the crime with which these defendants were charged consisted of the two statements of Belton.

As the defendants correctly point out, these state-

ments could not properly have been used for such a purpose. The first statement made by Belton, at the time of his arrest, was admitted for consideration only with respect to the guilt or innocence of Belton himself. His second statement presented an unusual situation. It was offered in evidence by the state but ruled to be inadmissible under the rule of *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. Subsequently, Belton testified as a witness in his own defense. Over objection, the court permitted him to be cross-examined on the basis of this second statement, which had previously been ruled to be inadmissible, and thereafter the court admitted the statement as an exhibit but explicitly and repeatedly instructed the jury that the evidence could properly be considered only on the question of Belton's credibility. In its charge to the jury the court repeated the limited purpose for which Belton's statement might be considered. We conclude that even if the court's ruling admitting into evidence the statement by Belton which had been previously excluded under the *Miranda* rule could be sustained for the purpose of attacking his credibility, despite specific authority to the contrary in such cases as *United States* v. *Fox,* 403 F.2d 97 (2d Cir.), nevertheless, as to the appealing defendants, evidence as to the theft from the Blakeslee Company was irrelevant and prejudicial when the state failed to produce evidence connecting the dynamite stolen from the Blakeslee Company with the dynamite seized by the police at their rendezvous with the alleged conspirators as it was stated to the court the state would do when it first sought to have this evidence admitted. Because the state did not meet the condition upon which it justified the admission of evidence

as to the dynamite stolen from the Blakeslee Company, and because its admission against these two defendants is not justified upon any other ground suggested in the record for its admission, the court erred in denying the motion of the defendants to strike the testimony of the Blakeslee employees.

The conclusion reached on these grounds renders unnecessary any further discussion of the propriety of the court's ruling. We would, however, note that under the circumstances the same result would be required by application of the principles recently reiterated in *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368, where we discussed the guidelines by which a trial court must determine whether the prejudicial tendency of "other crime" evidence outweighs its probative value. See also McCormick, Evidence § 157; 1 Wharton, Criminal Evidence §§ 232–248 (12th Ed.).

Although what we have said is dispositive of this appeal, we consider one further briefed assignment of error relating only to the defendant Johnson, since the same issue may arise upon a retrial of the case. The other briefed assignments of error are either without merit or involve claims and circumstances not likely to arise in the same context on a retrial.

It is Johnson's claim that the court erred in denying his motion to suppress evidence concerning a field manual of the United States Department of the Army entitled "Boobytraps" and in admitting the book as an exhibit for consideration by the jury. The book was seized by officers of the New Haven police department during a search of Johnson's apartment, which search was made subsequent to Johnson's arrest and pursuant to the authority of a

warrant issued by a judge of the Circuit Court. During the trial Johnson made a motion to suppress evidence concerning the book. This was denied, and the book was admitted in evidence against Johnson only. He took proper exception to the ruling of the court.

The book was one of several items taken from Johnson's apartment as a result of the search based on the search warrant. The warrant authorized a search for and seizure of "Dynamite, Blasting Caps, Guns, Ammunition, and any other paraphernalia which could be used to violate Sec. 54-197 of the Connecticut General Statutes." Section 54-197 is the conspiracy statute providing penalties for "[a]ny person who combines, confederates or agrees with another or others to accomplish any unlawful object by lawful means, or any lawful object by unlawful means, or any unlawful object by unlawful means, if one or more of such persons do any act in furtherance of such combine, confederation or agreement." None of the items specifically mentioned in the search warrant, viz., dynamite, caps, guns, ammunition, was seized during the search, and the book seized could only come within the purview of the language of the warrant as "paraphernalia" which could be used as the means of committing the crime of conspiracy.

Johnson's claim of error in the rulings of the court denying his motion to suppress and admitting the book as evidence against him is predicated upon the provisions of the fourth and fourteenth amendments to the United States constitution. It is now settled by the decisions of the Supreme Court of the United States that the provisions of the fourth amendment are, by operation of the fourteenth amendment, binding upon state courts. *Ker* v.

*California,* 374 U.S. 23, 30, 83 S. Ct. 1623, 10 L. Ed. 2d 726; *Mapp* v. *Ohio,* 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081; *Wolf* v. *Colorado,* 338 U.S. 25, 27, 69 S. Ct. 1359, 93 L. Ed. 1782. The fourth amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized."* (Emphasis added.)

It is quite evident that a portion of a search warrant which authorizes the seizure of any "paraphernalia which could be used to violate Sec. 54-197 of the Connecticut General Statutes" is, in that respect, a general warrant. *United States* v. *Marti,* 421 F.2d 1263 (2d Cir.). That phrase does not "particularly" describe the "things to be seized" but purports to authorize an officer executing the warrant to seize without limitation any item of personal property which could be used as the means of committing the crime of conspiracy. The extreme generality of the phrase becomes apparent when the record discloses that the warrant was issued on December 23, 1967, and the nature of the conspiracy with which Johnson was charged was not defined until the information was filed and a bench warrant was issued six days later, on December 29, 1967. A conspiracy may exist to do a limitless variety of illegal acts, and the language used in the warrant purported to authorize a search for paraphernalia useful in the perpetration of any sort of a conspiracy. As early as 1814 this court had occasion to state, of a search warrant the validity of which was in question: "This is a general search-warrant, which has always been determined to be illegal, not only in cases of searching for stolen goods, but in all other cases." *Grumon* v. *Raymond,* 1 Conn. 40,

43. Most recently, in *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315, we noted the "inept language" of a search warrant because of its lack of specificity regarding the property to be seized.

As the United States Supreme Court said in *Stanford* v. *Texas,* 379 U.S. 476, 481, 85 S. Ct. 506, 13 L. Ed. 2d 431, in discussing the illegality of a general warrant and referring to the language of the fourth amendment requiring that a search warrant must "particularly" describe the things to be seized: "These words are precise and clear. They reflect the determination of those who wrote the Bill of Rights that the people of this new Nation should forever 'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant." In *Marron* v. *United States,* 275 U.S. 192, 195, 48 S. Ct. 74, 72 L. Ed. 231, that court said: "The Fourth Amendment declares that the right to be secure against unreasonable searches shall not be violated, and it further declares that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.' General searches have long been deemed to violate fundamental rights. It is plain that the Amendment forbids them." The principle was more recently reenunciated in *Berger* v. *New York,* 388 U.S. 41, 58, 87 S. Ct. 1873, 18 L. Ed. 2d 1040: "The Fourth Amendment's requirement that a warrant 'particularly describ[e] the place to be searched, and the persons or things to be seized,' repudiated these general warrants and 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion

of the officer executing the warrant.' *Marron* v. *United States* . . . [supra]; *Stanford* v. *Texas* . . . [supra]." In accord are *United States ex rel. Nickens* v. *LaVallee,* 391 F.2d 123, 126–27 (2d Cir.); *People* v. *Baker,* 23 N.Y.2d 307, 319, 244 N.E.2d 232; *State* v. *Hawkins,* 255 Ore. 39, 463 P.2d 858; see also 47 Am. Jur. 524, Search and Seizure, § 37; 4 Wharton, Criminal Law and Procedure § 1555; note, 79 A.L.R.2d 1005.

We conclude that there is merit to this further assignment of error and that the court did err in permitting the book seized pursuant to the search warrant issued in this case to be admitted into evidence against the defendant Johnson.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.