STATE OF CONNECTICUT *v.* PAUL ACKLIN
STATE OF CONNECTICUT *v.* CURTIS WRIGHT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued March 4—decision released May 25, 1976

*Thomas Corradino,* for the appellant (defendant Paul Acklin).

*Max F. Brunswick,* for the appellant (defendant Curtis Wright).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

BARBER, J. The defendants in these two cases were tried together to a jury and found guilty of the crimes of conspiracy to commit robbery in the first degree, in violation of § 53a-48 of the General Statutes, robbery in the first degree, in violation of § 53a-134 (a) (2) of the General Statutes, and having a weapon in a motor vehicle, in violation of § 29-28 of the General Statutes. Although all the claims presented in their separate appeals are not identical, the principal issues raised are the same. Both defendants claim that the court erred in denying their motions to suppress evidence seized at the time of their arrest and in allowing the state to introduce into evidence strands of rope and two ski masks which were not used in the commission of the crimes charged in the informations. In addition, the defendant Acklin claims the court erred in denying his motion to dismiss the conspiracy charge. Our disposition of these three claims renders unnecessary any discussion of the defendants' other numerous assignments of error.

A brief summary of the facts will serve to place the defendants' claims in context. On March 21, 1974, at about 5:25 p.m., three black males, one of whom was armed with a handgun, held up Sam's Market, a New Haven grocery store, taking cash, several packages of cigarettes and a receipt for goods recently purchased by the proprietors of the store from a wholesale concern. An eleven-year-old youth in the vicinity at the time observed three black males getting into a blue Mustang automobile with a black racing stripe across its trunk. At about

6 p.m., two New Haven police officers observed a vehicle meeting this description, with three black males in it, followed it until it stopped, and then approached the occupants for questioning. The driver of the blue Mustang, the defendant Acklin, was frisked by the investigating officer and a handgun was discovered on his person. Acklin and the other two occupants of the Mustang, the defendant Wright and Joseph Miller, were then placed under arrest. A search of the persons of Acklin, Wright, and Miller, and of the automobile, disclosed a black sack containing money and the receipt taken from the grocery store, several packages of cigarettes, ammunition for the handgun, several strands of rope and two stocking masks. At the defendants' trial, Miller was called by the state and testified that he and the two defendants had planned and perpetrated the robbery.

## I

Prior to their trial, both defendants moved to suppress all the physical evidence seized at the time of their arrest, claiming that there had been no probable cause or speedy information to support that arrest. Before the evidence in question was admitted, the court held an evidentiary hearing on the motion which revealed the following pertinent facts in addition to those already summarized: At the time of the robbery, Officers Michael DiLullo and Edward Napolitano of the New Haven police department were patrolling in an unmarked police vehicle. At about 5:26 p.m., the officers received a bulletin over their car radio describing the robbery, the blue Mustang and the suspects. The bulletin also warned that the suspects were armed and urged caution in dealing with them. Approximately thirty minutes later, the offi-

cers noted the defendants' automobile on Orchard Street, approximately three or four miles from the scene of the robbery. There was nothing suspicious about the automobile or the manner in which it was being driven, other than the fact that it matched the description given in the bulletin. The officers followed the Mustang until it stopped, then pulled up behind it, turned on red flashing lights, and cautiously approached it. Officer DiLullo approached the driver, Acklin, displayed his police shield, informed Acklin that he was a police officer and told Acklin to get out of the car. Acklin was not told he was under arrest at this time, nor did DiLullo intend to arrest anyone. DiLullo "patted down" Acklin and discovered the handgun. Officer Napolitano then ordered Wright and Miller out of the car and all three occupants were thereafter "contained." When the defendants and Miller were outside of the Mustang, Officer Napolitano saw, in plain view on the front floor, a knife, sheath and strands of rope. Acklin, Wright and Miller were then searched and, when uniformed police arrived, the Mustang was searched. As a result of these searches a second knife, a box of ammunition, five packs of cigarettes, the black sack containing money and the wholesale receipt, and two stocking masks were discovered and seized in addition to Acklin's handgun and the knife and ropes seen on the floor of the car.

The defendants contend that Officers DiLullo and Napolitano had no right to investigate the occupants of the Mustang automobile and to "frisk" Acklin, since the officers had not observed the vehicle being operated in a suspicious manner, nor did they have firsthand information linking the blue Mustang and its occupants with the robbery. Therefore, they

argue, the evidence seized from the defendants and their automobile constitutes inadmissible "fruit" of the officers' unlawful actions; *Wong Sun* v. *United States,* 371 U.S. 471, 484–86, 83 S. Ct. 407, 9 L. Ed. 2d 441; and the trial court erred in permitting it to be introduced at trial.

We have on recent occasions considered challenges to the validity of a stop or search of an automobile. See, e.g., *State* v. *Love,* 169 Conn. 596, 363 A.2d 1035; *State* v. *Cari,* 163 Conn. 174, 186–87, 303 A.2d 7; *State* v. *Cobuzzi,* 161 Conn. 371, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664. Our decision in *State* v. *Watson,* 165 Conn. 577, 584–85, 345 A.2d 532, is, in large measure, dispositive of the defendants' claims: "Police have the right to stop for investigation short of arrest 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.' *Terry* v. *Ohio,* . . . [392 U.S. 1, 30, 33, 88 S. Ct. 1868, 20 L. Ed. 2d 889]. Furthermore, in *Adams* v. *Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612, the court held that '[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' Effective crime prevention and detection underlie the recognition that a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. '[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* v. *Ohio,* supra, 21. An officer must act on more than a mere hunch. These facts upon which the stop is predicated and the suspicion which they arouse, in addition to forming the basis for a lawful stop, limit the scope of the officer's initial actions following the stop. *Carpenter* v. *Sigler,* 419 F.2d 169, 171 (8th Cir.); see *Terry* v. *Ohio,* supra, 29. The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances."

In the present case, Officers DiLullo and Napolitano were certainly "able to point to specific and articulable facts" to justify an investigation of the defendants and their automobile—the automobile and the defendants fit the description of the men and automobile sought in connection with a robbery which had occurred only one-half hour before the investigation. In light of the similarity between the vehicle sought and the vehicle occupied by the defendants, the fact that the defendants were operating the vehicle in an orderly manner is of little, if any, significance.

Nor is it significant that Officers DiLullo and Napolitano, in investigating the defendants, were acting upon a police bulletin rather than firsthand information. Police action may be justified by the collective knowledge of the law enforcement organization. *State* v. *Romano,* 165 Conn. 239, 246, 332 A.2d 64; *State* v. *Cobuzzi,* supra, 377; see *United*

*States ex rel. LaBelle* v. *LaVallee,* 517 F.2d 750, 753 (2d Cir.). The police bulletin describing the suspects and automobile sought in connection with the robbery constituted speedy information, inferentially from an informant who was an eyewitness to or victim of a crime. There is nothing in the record or briefs to indicate that the defendants made any claim or introduced any evidence at the pretrial hearing casting doubt upon the reliability of the source of the information contained in the police radio bulletin. Cf. *Whiteley* v. *Warden,* 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306. "It is enough that the police officer initiating the chain of communication either had firsthand knowledge or received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth." *Daniels* v. *United States,* 393 F.2d 359, 361 (D.C. Cir.).

The defendants have also challenged the validity of the "pat down" which revealed the handgun in Acklin's pocket. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry* v. *Ohio,* 392 U.S. 1, 24, 88 S. Ct. 1868, 20 L. Ed. 2d 889; see *United States* v. *Diggs,* 522 F.2d 1310, 1314 (D.C. Cir.). Officer DiLullo, having been informed by the police bulletin that the suspects in the robbery were armed, was clearly justified in "patting down" Acklin. Once the handgun had been discovered on the person of Acklin, there

was probable cause to arrest all three occupants of the blue Mustang even before the articles in the vehicle came into plain view. The crimes for which the defendants were arrested and charged were felonies. General Statutes § 53a-25. " '[A] police officer may lawfully arrest without previous complaint or warrant any person whom he has reasonable grounds to believe has committed or is committing a felony. *State* v. *Cobuzzi,* 161 Conn. 371, 376, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75; General Statutes § 6-49.' [Citation omitted.]" *State* v. *Middleton,* 170 Conn. 601, 603, 368 A.2d 66. "Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed." *State* v. *Cobuzzi,* supra, 376; *State* v. *Middleton,* supra, 604; *State* v. *Love,* 169 Conn. 596, 599, 363 A.2d 1035.

Upon the facts of these cases, we have no doubt that the police officers were justified in investigating the defendants and in "frisking" the defendant Acklin in the course of that investigation. After the "frisk" had revealed a handgun, the officers had probable cause to arrest the defendants and to search their persons and their automobile contemporaneously with their arrest. *Chambers* v. *Maroney,* 399 U.S. 42, 47–48, 90 S. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94; *State* v. *Watson,* 165 Conn. 577, 588, 345 A.2d 532; *State* v. *Cobuzzi,* supra, 377. The trial court did not err in denying the defendants' motion to suppress the evidence in question.

## II

The defendants have also assigned error in the trial court's ruling permitting the state to introduce into evidence the strands of rope and two stocking masks seized at the time the defendants were arrested. In the absence of the jury, the defendants objected to their admission on the ground that they were irrelevant, arguing that the masks and ropes had not been used in the actual robbery, nor was there any evidence that the defendants had planned to use them. The defendants further argued that the prejudicial impact of allowing the admission of this evidence outweighed any probative value that it might have had. The state claimed that although the items had not been used in the actual robbery of Sam's Market on March 21, 1974, they did have probative value in that they would lend credence to the conspiracy charge. The court ruled that the ropes and masks were admissible, and the defendants took exception.

"Evidence as to articles found in the possession of an accused person subsequent to the time of the commission of a crime for which he is being tried is admissible only if it tends to establish a fact in issue or to corroborate other direct evidence in the case; otherwise the law does not sanction the admission of evidence that the defendant possessed even instruments or articles adapted to the commission of other crimes. . . . The reason is analogous to that applicable to evidence of other crimes committed by a defendant but unrelated to the offense under investigation." *State* v. *Groos,* 110 Conn. 403, 407, 148 A. 350; see *State* v. *Brown,* 169 Conn. 692, 364 A.2d 186, and cases and authority therein cited; 22A C.J.S., Criminal Law, § 712 (c).

The state offered no evidence to show that the defendants used the masks and ropes in the commission of the robbery with which they were charged, or that they had contemplated their use in that robbery. The third participant in the robbery, Miller, testified for the state but did not mention or allude to the masks or ropes in his testimony. The state's claim that the admission of the masks and ropes would lend credence to the charge of conspiracy is, at best, tenuous.[1] The defendants were charged with conspiracy to rob Sam's Market, and not with conspiracy to commit some other robbery. Although the masks and ropes might well have been probative of an intent to commit other robberies, they were not probative of the conspiracy with which the defendants were charged.

Ordinarily, the admissibility of evidence tending to prove other crimes is a matter for the discretion of the trial court. See, e.g., *State* v. *Brown, supra.* Under the circumstances of this case, however, we are constrained to conclude that the prejudicial effect of the ropes and masks so far outweighed their minimal probative value that their admission into evidence constituted an abuse of the trial court's discretion. *State* v. *Johnson,* 160 Conn. 28, 33, 273 A.2d 702; see McCormick, Evidence (2d Ed.) § 191, for a discussion of the rules to be followed by the trial court and appellate court, respectively, in weighing the probative value of evidence against its prejudicial impact, which concludes (p. 454) that "discretion implies not only leeway but responsibility." See also *State* v. *Battle,* 170 Conn.

[1] It has been noted that it is easy for police and prosecutors to abuse the use of a charge of conspiracy for the purpose of bringing in otherwise improper evidence. See 1 Miller, Criminal Law § 32, p. 110 n.7; *Krulewitch* v. *United States,* 336 U.S. 440, 445–58, 69 S. Ct. 716, 93 L. Ed. 790 (opinion of Jackson, J., concurring).

469, 365 A.2d 1100. The court erred in admitting the masks and ropes into evidence, and despite the otherwise overwhelming evidence of guilt; see *State* v. *Williams*, 170 Conn. 618, 634, 368 A.2d 140; the error cannot be considered harmless. *State* v. *Ferraro*, 160 Conn. 42, 45, 273 A.2d 694; *State* v. *Johnson*, supra.

### III

As a new trial must necessarily be ordered, we will limit our consideration of the remaining assignments of error to a discussion of the defendant Acklin's claim that the court erred in denying his motion to dismiss the conspiracy charge against him. The defendant argues that a prosecution both for the substantive offense of robbery and for conspiracy to commit that same robbery places him in jeopardy twice for the same offense, contrary to the fifth and fourteenth amendments.[2]

As a general rule, the double jeopardy clause does not bar prosecution of a defendant for both conspiracy to commit a substantive offense and the substantive offense itself, and, in most cases, separate sentences can constitutionally be imposed upon conviction. See *Iannelli* v. *United States*, 420 U.S. 770, 779–80, 95 S. Ct. 1284, 43 L. Ed. 2d 616; *United States* v. *Feola*, 420 U.S. 671, 693, 95 S. Ct. 1255, 43 L. Ed. 2d 541; *Pinkerton* v. *United States*, 328 U.S. 640, 644, 66 S. Ct. 1180, 90 L. Ed. 1489;

---

[2] The denial of a motion to dismiss is not properly assignable as error unless a fundamental constitutional right is involved. *State* v. *L'Heureux*, 166 Conn. 312, 324, 348 A.2d 578; *State* v. *Peay*, 165 Conn. 374, 335 A.2d 296; Maltbie, Conn. App. Proc. § 212. Although it is doubtful whether this defendant states a claim of constitutional dimension, he persists in his claim that his constitutional right against double jeopardy under the fifth and fourteenth amendments to the constitution of the United States has been violated.

*State* v. *Johnson,* 162 Conn. 215, 218–19, 292 A.2d 903. The defendant argues, however, that his case is governed by Wharton's rule,[3] an exception to the general rule, which holds that in certain circumstances a defendant cannot be tried for both a substantive offense and conspiracy to commit that offense.

In its most recent formulation, Wharton's rule reads as follows: "An agreement by two persons to commit a crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." 1 Wharton, Criminal Law & Procedure (Anderson Ed.) § 89, p. 191. In *State* v. *Kemp,* 126 Conn. 60, 81, 9 A.2d 63, this court acknowledged the rule, but held that that case did not fall within "the principle that where a crime can only be committed by the concurrence of two parties, they must be charged with its commission and not with a conspiracy to commit it." The United States Supreme Court, in a recent decision which considered the rule at length, concluded that "Wharton's Rule does not rest on principles of double jeopardy . . . . Instead, it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense,

---

[3] "Wharton's Rule owes its name to Francis Wharton, whose treatise on criminal law identified the doctrine and its fundamental rationale." *Iannelli* v. *United States,* 420 U.S. 770, 773, 95 S. Ct. 1284, 43 L. Ed. 2d 616.

and the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Iannelli* v. *United States,* supra, 782.[4]

The defendant's claim that Wharton's rule applies in this case cannot be sustained. The substantive offense with which he is charged is defined as follows: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon or dangerous instrument." General Statutes § 53a-134 (a) (2). It is clear from the language of the statute that participation by two or more persons, or an agreement between two or more persons, is not a necessary element of the crime of first degree robbery. Participation by two or more persons will increase third degree robbery to second degree robbery; compare General Statutes §§ 53a-135, 53a-136; but the distinctive element of first degree robbery (as charged in the information) is the presence of a deadly weapon. First degree robbery is not a crime "of such a nature as to necessarily require the participation of two persons for its commission" and therefore Wharton's rule, by its own terms, is not applicable.[5] Furthermore, there were three participants in the robbery, and a well-recognized exception to Wharton's rule renders it inapplicable where more parties participate in the conspiracy than are required for the commission of the substantive offense. *United States* v. *Becker,* 461 F.2d 230, 234

[4] It is noted that Mr. Justice Douglas, dissenting, states: "Wharton's Rule in its original formulation was rooted in the double jeopardy concern of avoiding multiple prosecutions." *Iannelli* v. *United States,* 420 U.S. 770, 792, 95 S. Ct. 1284, 43 L. Ed. 2d 616.

[5] It was the defendant Acklin, himself, who was armed with a deadly weapon.

(2d Cir.); *Robinson* v. *State,* 229 Md. 503, 515, 184 A.2d 814; see *State* v. *Faillace,* 134 Conn. 181, 185, 56 A.2d 167; *State* v. *McLaughlin,* 132 Conn. 325, 334, 44 A.2d 116. The court did not err in denying the defendant Acklin's motion to dismiss.

There is error, the judgment in each case is set aside, and a new trial is ordered.

In this opinion the other judges concurred.