STATE OF CONNECTICUT *v.* JAMES E. RUNKLES, JR.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, Js.

Argued November 10, 1977—decision released March 14, 1978

*John P. Febbroriello,* with whom, on the brief, was *Peter C. Herbst,* for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (state).

House, C. J.  On a trial to the Superior Court in Litchfield County, the defendant was found guilty of the crimes of possession of marihuana with intent to sell in violation of § 19-480 (a) of the General Statutes and of having a weapon in a motor vehicle in violation of § 29-38 of the General Statutes.  He appealed to this court from the judgment and from the decision of the trial court denying his motion to suppress evidence.

As the defendant notes in his brief, "[t]he appeal of the appellant is based upon two basic positions: one is that there was no probable cause to stop and search the vehicle of the appellant; and the second is that if there was probable cause to do so a warrant was necessary."  While he has attacked each conclusion of the court and several rulings on evidence, and also assigns error to the refusal of the court to add certain facts to its finding, the defendant has not attacked the court's affirmative findings of fact.

Because of the nature of the case, it is necessary to summarize the court's finding in greater detail than usual.  In 1974, Joseph Mancini was a sergeant in the Waterbury police department and in charge of the Naugatuck Valley regional crime squad.  During the months of February and March, he received information that large shipments of mari-

huana were being sent into Connecticut from Texas by way of Massachusetts. Sometime before 1 p.m. and again between 5 and 6 p.m. on April 22, he received word from a reliable informant, whom he knew well, that a shipment of 1000 to 1500 pounds of marihuana coming from El Paso, Texas, would be transported by U-Haul trailers down U.S. route 7 from Massachusetts into Connecticut. He was also told that Robert Piccolo of Waterbury was involved in the shipment and was either leading or driving a U-Haul trailer or a Mercury. Mancini knew Piccolo and knew that he was involved with narcotics. Mancini reported the information to two sergeants in the Connecticut state police, Frederick H. Bird and Thomas F. Carney, and gave them a detailed description of Piccolo. A teletype message concerning the information was sent out by the state police to other state police barracks and Sergeant Carney, a field supervisor with the state police narcotics squad, western division, discussed the message with Sergeant Joseph Janco of troop B in Canaan. The teletype message contained a description of Piccolo.

James M. McGarry, the police chief in Sheffield, Massachusetts, which town abuts the town of Canaan, visited troop B at 6:30 p.m., read the teletype message and took a copy with him. He returned to Sheffield and stationed himself on the east side of U.S. route 7 and observed traffic. About 7:30 p.m., McGarry observed a Mercury Marquis pulling a U-Haul trailer with Texas license plates proceeding southerly on route 7 and followed it. He radioed the Great Barrington police and asked them to notify troop B in Canaan that he was following the Mercury Marquis pulling the U-Haul trailer south on route 7. Following the U-Haul

trailer at a distance quite far behind, he crossed into Connecticut, keeping the Connecticut state police advised of his location through the Great Barrington radio. At one time, the Mercury was traveling slowly and McGarry observed a small, black, foreign car in front of it. Both the Mercury, pulling the U-Haul trailer, and the foreign car pulled off the highway and into a gas station at the intersection of U.S. route 7 and route 63. McGarry continued south on route 63, passing the gas station on his right. The foreign car had stopped at the station, facing into route 63 at almost a 90 degree angle to route 63, and as McGarry passed the station his headlights shone on the occupant of that car whom McGarry observed was an individual fitting the description of Robert Piccolo as given in the teletype. McGarry continued a short distance beyond the station, turned around and went back to the gas station. By the time he arrived, the foreign car had left but the Mercury and U-Haul trailer were still at the station and Sergeant Janco and Trooper Dante Notte were there. McGarry, as soon as he arrived, told the officers that the occupant of the foreign car met the teletyped description of Piccolo. The defendant, Runkles, was the driver of the Mercury and McGarry identified him in the courtroom at the trial.

Trooper Notte had been on patrol duty and had been alerted by Sergeant Janco to be on the lookout for the U-Haul trailer on U.S. 7 and had received by police radio information that Chief McGarry was following it and that it was probably accompanied by an Audi automobile, a small foreign-type car. When the Audi and U-Haul trailer turned into the gas station, Notte followed them and went alongside the Mercury with his lights flashing on the oper-

ator's door. The Audi was at the station less than a minute before it left the scene and Notte shouted to another trooper to pursue it. The only person in the Mercury was the defendant, Runkles, who was sitting in the driver's seat. Notte asked the defendant for his license and registration and the defendant produced his license and said that the registration was in his briefcase which Notte noticed was on the floor in the back seat immediately behind Runkles.

At this point, Sergeant Janco arrived and Notte told him what had happened. At Janco's request, Runkles got out of the car. When asked what was in the U-Haul trailer, Runkles said, "antiques."

In response to a request that he unlock the trailer, the defendant stated that he did not have the key because it had been mailed to a forwarding address. When asked if he minded whether the officers opened the trailer, he stated that they had no reason to do so. Although the doors to the trailer were locked, they were loosely fitted. Trooper Notte examined the lock and the doors and, as they were loose, he knelt down and flashed his light into the opening underneath the door near the bottom of the trailer and observed plant material in burlap bags covered with plastic. He also noticed a definite strong herb-type scent which, from his experience, he identified as marihuana. Sergeant Janco similarly inspected the trailer and confirmed Trooper Notte's findings whereupon the lock was snapped and they found in the trailer 999 pounds of marihuana contained in twenty-three bags. It had a value of about $320,000. Tests later conducted by the state toxicology laboratory confirmed that it was marihuana.

After discovering the marihuana, Trooper Notte read the "Miranda" warning to the defendant and placed him under arrest. Sergeant Janco then opened the front door of the Mercury and saw that the briefcase was now on the front seat of the car. Upon opening the briefcase, Janco found it contained a small loaded NVR .22-caliber revolver. Runkles had no permit to carry the gun. The black Audi automobile registered in the name of Robert Piccolo was later found in Torrington where it had been abandoned.

The defendant briefed five claims of error in the refusal of the trial court to make corrections in the finding, but it does not appear that the claims have merit. Only admitted or undisputed facts will be added to a finding; Practice Book § 628 (a); *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 368, 362 A.2d 519; and a finding will not be corrected merely to insert therein in one place a fact already found in another. *Cleveland* v. *Cleveland,* 165 Conn. 95, 96, 328 A.2d 691.

The defendant's claim that the evidence seized at the time of the arrest was improperly admitted in evidence is predicated on his assertion that the court erred in concluding that the police had probable cause to search the U-Haul trailer, automobile and briefcase without a warrant. The defendant's reliance upon the holding of the United States Supreme Court in *Whiteley* v. *Warden,* 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306, is misplaced. In that case the court (p. 567) reaffirmed its decision in *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327, that although an informer's tip by itself may not support a finding of probable cause for an arrest and search, nevertheless, addi-

tional information gathered by the arresting officers in an investigation undertaken as a result of the tip, which information is corroborative of that tip that the arrestee has committed or was in the process of committing a felony, may supply sufficient probable cause for an arrest and search. That was clearly the circumstance in the present case. The information given to the police by the informer was detailed, Piccolo was identified by name and description, the route to be taken by Piccolo and the U-Haul trailer with Texas registration was foretold, and the officers detected the odor of marihuana from the trailer. All of these served amply to corroborate the informer's tip. "Police action may be justified by the collective knowledge of the law enforcement organization. *State* v. *Romano,* 165 Conn. 239, 246, 332 A.2d 64; *State* v. *Cobuzzi* [161 Conn. 371, 377, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664]; see *United States ex rel. LaBelle* v. *LaVallee,* 517 F.2d 750, 753 (2d Cir.)." *State* v. *Acklin,* 171 Conn. 105, 111–112, 368 A.2d 212. We conclude that the officers had ample grounds for a reasonable belief that the defendant was committing a felony and that they had sufficient probable cause to justify the immediate search and his arrest under the holdings of the United States Supreme Court and of this court. See *South Dakota* v. *Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000; *Adams* v. *Williams,* 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612; *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327; *State* v. *Schoenbneelt,* 171 Conn. 119, 368 A.2d 117; *State* v. *Acklin,* supra; *State* v. *Love,* 169 Conn. 596, 600, 363 A.2d 1035.

Nor do we find any error in the admission into evidence of the loaded gun which the police found

in the defendant's briefcase which they searched after they had arrested the defendant. The search and seizure took place at the site of and immediately after the arrest of the defendant and after the officers had observed that the briefcase which had been on the floor of the car behind the defendant had been moved to the passenger's side of the front seat. "[T]he situation unquestionably provided the exigent circumstances and probable cause to justify the search. *Chambers* v. *Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94." *State* v. *Watson*, 165 Conn. 577, 588, 345 A.2d 532; see *Texas* v. *White*, 423 U.S. 67, 96 S. Ct. 304, 46 L. Ed. 2d 209; *State* v. *Acklin*, supra, 113; *State* v. *Cari*, 163 Conn. 174, 187, 303 A.2d 7.

The defendant's remaining claim is that the court erred in sustaining the state's objection to a question asked during the cross-examination of Sergeant Mancini. The sergeant had testified concerning the information he had received from an informant which information led to the apprehension of the defendant. On cross-examining the officer, the defendant asked: "For the information that you gained from this particular informer, did you compensate him in any way, shape or form?" The state objected that the information sought was irrelevant and immaterial. The defendant claimed that the question was a proper one because he wished to find out if the informer was, in fact, "an agent under the control of the witness," if he were an employee, and "perhaps, the reason why he stepped forward as an informant, whether it's for compensation, some type of personal gain or whatever." He also stated: "I think it goes to the reliability of the informant. It would also go to the question of the search in

this matter, Your Honor. I feel, as I expressed during the motion to suppress, that if this particular informant were an active employee or otherwise associated with the narcotics squad, then the information that he has is information that the narcotics squad had well in advance of the particular events on April 22."

The ruling of the court was a discretionary one and "[t]he court has a wide discretion in its rulings on the relevancy of evidence." *State* v. *Carr,* 172 Conn. 458, 464, 374 A.2d 1107; *State* v. *Saia,* 167 Conn. 286, 291, 355 A.2d 88; *State* v. *Blyden,* 165 Conn. 522, 531, 338 A.2d 484. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. *Eason* v. *Williams,* 169 Conn. 589, 591, 363 A.2d 1090; *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639. While the identity of an informer is information as to which the state has a qualified privilege "to further and protect the public interest in effective law enforcement"; *State* v. *Harris,* 159 Conn. 521, 528, 271 A.2d 74; *Roviaro* v. *United States,* 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639; the question to which objection was sustained did not require disclosure of the identity of the informer and we are inclined to believe that the court's ruling was an erroneous one. Nevertheless, any error committed was clearly harmless. In order to constitute reversible error, the ruling must have been both erroneous and harmful. *Milton* v. *Wainwright,* 407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1; *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; *State* v. *Fredericks,* 154 Conn. 68, 72, 221 A.2d 585. The question asked of the witness had nothing

to do with the actual guilt or innocence of the defendant but concerned the reliability of the information supplied to the police by the informant. The reliability and accuracy of the information supplied were fully confirmed by the subsequent events and the evidence of the defendant's guilt was so overwhelming that the error, if any, was harmless. We cannot find any possibility of prejudice. *State* v. *Carr,* supra, 471; see also *State* v. *Rado,* 172 Conn. 74, 86, 372 A.2d 159; and *Milton* v. *Wainwright,* supra, 372, 377.

There is no error.

In this opinion the other judges concurred.