RICHARD LANGSTON *v.* COMMISSIONER OF
CORRECTION
(AC 26517)

Gruendel, Lavine and West, Js.

Argued February 22—officially released October 9, 2007

*James A. Killen,* senior assistant state's attorney,
with whom, on the brief, were *Michael Dearington,*

state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellant (respondent).

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellee (petitioner).

*Opinion*

WEST, J. The respondent, the commissioner of correction, appeals from the judgment of the habeas court granting the second amended petition for a writ of habeas corpus filed by the petitioner, Richard Langston. On appeal, the respondent claims that the habeas court improperly concluded that the petitioner was denied the effective assistance of trial counsel because his privately retained counsel (1) failed to object to certain testimony and (2) conceded during final argument that the petitioner had committed one of the crimes with which he was charged. We agree and therefore reverse the judgment of the habeas court.

The following procedural history is relevant to the respondent's appeal. The petitioner was arrested on March 25, 1998, in connection with an armed robbery and shooting that occurred on March 4, 1998, during a drug transaction in a parking lot on Garden Street in Hartford. The petitioner was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (5), commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k, criminal possession of a firearm in violation of General Statutes § 53a-217 and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). The jury found the petitioner not guilty of assault in the first degree, but guilty of the other charges. The petitioner's conviction was upheld summarily on direct appeal. See *State* v. *Langston*, 67 Conn. App. 903, 786 A.2d 547 (2001), cert. denied, 259 Conn. 916, 792 A.2d 852 (2002).

The petitioner filed a petition for a writ of habeas corpus in April, 2002, in which he alleged that he was denied the effective assistance of counsel on numerous grounds. Only two of those claims are relevant to this appeal. The court granted his second amended petition for a writ of habeas corpus in part, concluding that defense counsel had rendered ineffective assistance, pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), by (1) failing to object to the prosecutor's questioning an investigating police officer about a handgun silencer made from a potato (potato silencer) that was found at the time of the petitioner's arrest and (2) conceding during final argument, without the petitioner's prior knowledge or permission, that the petitioner had participated in the robbery. The respondent filed this appeal following the court's granting the petition for certification to appeal. Additional facts will be addressed as necessary.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"It is well established that we need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. . . . To prevail on the prejudice prong, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations omitted; internal quotation marks omitted.) *Floyd* v. *Commissioner of Correction*, 99 Conn. App. 526, 530–31, 914 A.2d 1049, cert. denied, 282 Conn. 905, 920 A.2d 308 (2007).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it had proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"The second part of the *Strickland* analysis requires more than a showing that the errors made by counsel may have had some effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, 101 Conn. App. 133, 136–37, 921 A.2d 128, cert. denied, 283 Conn. 905, 927 A.2d 916 (2007).

I

The respondent first claims that the court improperly determined that defense counsel rendered ineffective assistance by failing to object to testimony concerning the potato silencer. We agree.

At the petitioner's criminal trial, the prosecutor called Juan Roman, a detective with the Hartford police department, to testify about the petitioner's arrest. According to Roman, the petitioner was arrested at his residence in East Hartford. The petitioner and his female companion, who shared the residence, both gave the officers permission to search the apartment. One of the officers found a round object bound with black electrical tape. The round object was determined to be a potato. A police sergeant who accompanied Roman asked the petitioner what the object was. The petitioner responded that it was a silencer for a handgun and that he had seen something like it on television. In his amended petition for a writ of habeas corpus, the

petitioner alleged that defense counsel's representation was ineffective because he failed to object to or move to strike Roman's testimony about the potato silencer because the testimony was "irrelevant and remote . . . ."

The habeas court concluded that defense counsel's performance was deficient in failing to file a motion in limine regarding evidence of the potato silencer or to object to evidence about it at trial. The court found that there was overwhelming evidence against the petitioner, but concluded that the evidence of the potato silencer was not harmless and likely affected the result of trial. In reaching its conclusion, the court relied heavily on *State* v. *Acklin*, 171 Conn. 105, 368 A.2d 212 (1987).[1] "Evidence as to articles found in the possession of an accused person subsequent to the time of the commission of a crime for which he is being tried is admissible only if it tends to establish a fact in issue or to corroborate other direct evidence in the case; otherwise the law does not sanction the admission of evidence that the defendant possessed even instruments or articles adapted to the commission of other crimes." (Internal quotation marks omitted.) Id., 114. In sum, the court reasoned that because there was no evidence that the potato silencer was used on the night in question, evidence about it was irrelevant and therefore inadmissible. The court did not, however, explain

---

[1] The evidence at issue in *Acklin* is factually dissimilar. The *Acklin* defendants robbed a grocery store and were seen leaving in an identifiable motor vehicle. *State* v. *Acklin*, supra, 171 Conn. 107. Those defendants were apprehended with their vehicle about thirty minutes after the robbery; one of them was carrying a firearm. Id., 108. When the police searched the motor vehicle, they found strands of rope and two ski masks in the trunk along with items taken from the grocery store. Id. Although the masks and strands of rope had not been used during the robbery, the state entered them into evidence as proof of a conspiracy. Id., 114. Our Supreme Court reversed the convictions of the *Acklin* defendants, concluding that the trial court had abused its discretion by admitting the strands of rope and masks because they were more prejudicial than probative. Id., 115–16.

how the result of the trial likely would have been different if the evidence concerning the potato silencer had not been admitted.

As previously stated, the events that gave rise to the charges against the petitioner stemmed from a drug transaction. The state produced evidence at trial that the victim and a friend approached the petitioner and his accomplice to purchase drugs. The state also produced evidence that the petitioner had a handgun in the waistband of his trousers at the time he demanded money from the victim. Although the victim was shot in the knee, no one saw the petitioner shoot the victim. The weapon with which the victim was injured was not recovered. The petitioner was tried under an information charging him with assault in the first degree in violation of § 53a-59 (a) (5),[2] commission of a class A, B or C felony with a firearm in violation of § 53-202k,[3] criminal possession of a firearm in violation of § 53a-217[4] and robbery in the first degree in violation of § 53a-134 (a) (2).[5] Section 53a-59 (a) (5) contains the element

---

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of the discharge of a firearm."

The jury found the petitioner not guilty of assault in the first degree. Evidence pertaining to the potato silencer, although relevant, was not prejudicial to the petitioner as to that charge.

[3] General Statutes § 53-202k provides in relevant part: "Any person who commits a class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he *possesses* any firearm . . . shall be imprisoned for a term of five years . . . ." (Emphasis added.)

[4] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person *possesses* a firearm . . . and (1) has been convicted of a felony . . . ." (Emphasis added.)

[5] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he . . . (2) is armed with a deadly weapon . . . ."

of "a firearm." Sections 53-202k, a sentence enhancement statute, and 53a-217 contain the element of "possession" of a firearm. Section 53a-134 (a) (2) contains the element of "armed with a deadly weapon."

On appeal, the respondent argues that evidence of the potato silencer had a tendency to establish that the petitioner had access to a handgun and knew how to use it. That evidence, therefore, was relevant to the crimes with which the petitioner was charged. We agree with the respondent.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. Evidence is material when it is offered to prove a fact directly in issue or a fact probative of a matter in issue. See C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.1.3. Testimony concerning the potato silencer was relevant because it had a tendency to prove that the petitioner possessed a handgun.

"A party is entitled to offer any relevant evidence to aid the trier of fact in its determination, as long as the evidence is not unfairly prejudicial. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible. . . .

"However, relevant evidence may be excluded if the court determines that its probative value is outweighed by the danger of unfair prejudice . . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is

inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the [party against whom it is offered] but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Warren*, 100 Conn. App. 407, 418–19, 919 A.2d 465 (2007). Unlike the strands of rope and face masks that actually were placed into evidence for the jury to see in *Acklin*, the evidence concerning the potato silencer was testimonial. Furthermore, that testimony was unlikely to stir the passions of the jury. Compare *State* v. *Paulino*, 223 Conn. 461, 477, 613 A.2d 720 (1992) (defendant wearing paper bag over head at pretrial more prejudicial than probative of identity).

On the basis of our plenary review of the record, we conclude that the testimony concerning the potato wrapped in tape that the petitioner told police was a silencer for a handgun was relevant to his possession of a weapon, which was an element of at least two of the crimes with which he was charged. If the petitioner had a silencer for a handgun, it was circumstantial evidence that he possessed a handgun. Had defense counsel filed a motion in limine to exclude the evidence or objected to it at trial, it is highly likely that the trial court would have denied the motion or overruled the objection. "[T]he failure to pursue unmeritorious claims cannot be considered conduct falling below the level of reasonably competent representation." *Sekou* v. *Warden*, 216 Conn. 678, 690, 583 A.2d 1277 (1990). The petitioner, therefore, failed to meet the first *Strickland* prong that defense counsel's performance with respect to the potato silencer fell below an objective standard of reasonableness.[6] For these reasons, we conclude that

---

[6] Our review of the transcript of the petitioner's trial demonstrates that defense counsel did not ignore the evidence concerning the potato silencer. On cross-examination, defense counsel asked Roman whether he had ever

the habeas court improperly granted the petition for a writ of habeas corpus regarding defense counsel's failure to object to evidence of the potato silencer.

## II

The respondent's second claim is that the court improperly found a portion of defense counsel's final argument to be a concession that the petitioner committed robbery. We agree.

The specific language used by defense counsel that the court found fell below the objective standard of reasonableness was, "I'll concede for a moment a robbery did occur." "[W]e must review the comments complained of in the context of the entire trial." *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993). "We review the argument that the [petitioner] claims is improper in the context in which it was used." *State* v. *Cromety*, 102 Conn. App. 425, 438, 925 A.2d 1133 (2007); see also *State* v. *Warholic*, 278 Conn. 354, 364 nn.4–5, 897 A.2d 569 (2006).

On the basis of our review of the final argument of defense counsel, we discern that the theory of defense was to cast doubt on the credibility of the victim and his friend who identified the petitioner as the perpetrator of the crimes. The habeas court summarized the argument of defense counsel. First, defense counsel stated that "[i]t all comes down to two people," the victim and his friend, both of whom are convicted felons and users of crack cocaine. Counsel then stated that the victim

seen a potato used as a silencer during his training and experience as a police officer. Roman admitted that he had not, but that he had heard of a potato silencer. Defense counsel asked Roman, on the basis of his knowledge of firearms, how effective a potato would be as a silencer. Roman did not know and speculated that a potato might blow apart given the type of round in the handgun, but that a potato wrapped in tape may hold together a little tighter. We assume, without deciding, that counsel's strategy was to debunk the effectiveness of a potato silencer and, thus, the petitioner's familiarity with handguns.

and his friend testified that they had a clear view of the petitioner and his accomplice, but also argued that the lighting was not good, it was dark, which "limits people's ability to see what is in front of them and to recognize people." Defense counsel noted an inconsistency in the identification of the shooter. At trial, the victim's friend testified that he saw the petitioner shoot the victim, but in his statement to the police, he stated that he only heard the gunshot. Defense counsel conceded on the basis of the medical evidence that the victim had been shot, but then argued: "Remember, there were two people here that were involved in this, not just [the petitioner], but his unnamed partner, who might have been his partner in a drug deal or who might have taken the gun and decided, I'm going to start shooting."

Our review of defense counsel's closing argument also discloses that counsel noted that the victim and his friend had gone to several places on the night in question in search of drugs. Counsel then focused on the credibility of the victim and his friend. "The question is, where was [the victim shot] and who shot him? Now, you are going to have to find credible the testimony of these two people." Defense counsel also emphasized to the jury that the police never found the gun used to shoot the victim and questioned the relevance of the potato silencer. In response to the prosecutor's argument regarding consciousness of guilt, defense counsel argued that the petitioner sought to avoid the police due to involvement with drugs and past crimes, not because of involvement in the shooting of the victim.

Defense counsel argued: "It comes down to [the victim and his friend], and again, I want to remind you that it has not been proven by testimony that the area was bathed in light that night because the investigator didn't say that it was because he didn't know. He went there later, over a year later.

"Two, [the victim and his friend] are convicted felons. They have the same kind of lifestyle that . . . you probably suspect [the petitioner] of having. And again, as I've said before, we have some evidence. It is all the same group of people, and that is the lifestyle, the lifestyle of buying drugs, of using drugs, not just a little pot on the weekends, but smoking crack cocaine, a dangerous, addictive drug which causes behavior to change.

"Understand, it is dark. They don't know, they are not sure what they saw. [The victim's friend] said two different things at two different times. He didn't know for sure. He said he did. The photo array, ladies and gentlemen, the photo array, [the friend] had indicated to the police earlier that he thought he knew [the petitioner] from the street, called him by a street name.

"So, when he sees the photo array, he's going to be looking for the guy he knows. So, I don't think that photo array is that significant in terms of somebody who has already seen [the petitioner] and maybe he saw [the petitioner] from another time on the street. He said, I recognized him. I don't know who he is. I've seen him around before. I've had dealings with him, whatever that means, prior to the night of March 4, 1998.

"So, again, the photo array may not be the evidence you are looking for. Again, it all seems to come down to the same two people, [the victim and his friend]. . . . [I]f you believe what they said, that it was at that point that they got shot, maybe not the fact that maybe they went to another place to look for drugs and were shot, that is possible; or that [the petitioner] is not the one who discharged the weapon because there is a lot of doubt as to really who discharged the weapon, and it is possible.

"And if you think, well, that doesn't make sense— [the petitioner], you heard that [he] held a gun on these

people and got a hundred dollars in cash. All right, there is nothing logical about this, ladies and gentlemen. To the logical mind, it just doesn't make any sense anyway. To do something like that, to get money and to shoot somebody in the legs when they're retreating after they have given up the money. That sounds a little strange.

"So, applying logical principles, I think [it] is going to fall by the wayside here. And part of the illogic that you may find to be reasonable is that the other individual grabbed the gun and might have started shooting. He was certainly—*if you are going to assume, and I'll concede for the moment that a robbery did occur, then let's also make the reasonable assumption that there was another individual there because everybody testified that there was a second person there.*

"So, don't think there is any doubt, and maybe the second person was the shooter. Who knows? There is no logic here. There is no logic in somebody robbing somebody and shooting them in the legs, which is why I'm also suggesting that maybe [the victim] was hopping around from place to place looking to buy more crack cocaine to stay high. So, he goes to Garden Street. They don't have any drugs. He goes somewhere else, then he gets robbed or then maybe there is a disagreement because after all, these are drug users, drug dealers, it was 1:30 at night, it is not a great part of the world. I mean, we just don't know." (Emphasis added.)

The habeas court also summarized, in part, the prosecutor's rebuttal argument, stating that the prosecutor argued that defense counsel conceded that the petitioner had a gun, but at some point the accomplice grabbed it and shot the victim. The prosecutor further argued that there was no evidence to support defense counsel's argument and that it was sheer speculation. The habeas court noted that defense counsel raised no objection to the prosecutor's argument by way of

seeking to clarify that he did not concede that the petitioner was involved in the incident in any way.

The court also cited, in part, defense counsel's testimony at the habeas trial. When asked whether it was his intention to suggest that the petitioner had committed the robbery, defense counsel responded: "It was not my intention. My intention was simply to create reasonable doubt by either (a) suggesting that there was never a robbery or (b), if there was a robbery, it might have occurred somewhere else and (c), even if there was a robbery at the physical location that it was described, [the petitioner] had nothing to do with it." Counsel also testified that he did not object to the prosecutor's rebuttal argument because he knew that the jury understood the context of his argument. Despite finding that defense counsel at some point in his argument denied that the petitioner was involved with either the robbery or shooting, the court concluded that that denial did not deflect the impact of the concession because there had not been an extensive attack on the reliability of the identification.

On the basis of our review of defense counsel's closing argument, the context of the trial and the theory of defense, we conclude that the court's finding that defense counsel conceded that the petitioner robbed the victim was clearly erroneous. The theory of defense was that the petitioner had been identified wrongly as the perpetrator of the crimes. What the court characterized as a concession, in fact, was a rhetorical device intended to highlight for the jury the lack of logic with respect to the robbery and the shooting, i.e., if the victim had given his money to the petitioner and was retreating, why would the petitioner then shoot the victim.

"Closing arguments of counsel . . . are seldom carefully constructed *in toto* before the event; improvisation

frequently results in syntax left imperfect and meaning less than crystal clear. . . . Therefore, because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. . . . [W]e must review the comments complained of in the context of the entire trial." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 358, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). We need not determine in hindsight whether defense counsel could have made his rhetorical argument clearer, as our review of the challenged portion of the argument within the context of the whole argument and the trial itself demonstrates, defense counsel did not concede that the petitioner committed the robbery at issue.

The judgment is reversed and the case is remanded with direction to render judgment denying the petition for a writ of habeas corpus.

In this opinion the other judges concurred.